UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| **HELEN HEATH AND**<br>**JOHN HEATH** | **No.**_____ |
| **Plaintiffs,** | |
| **v.** | **COMPLAINT AND**<br>**JURY DEMAND** |
| **ETHICON, INC. and**<br>**JOHNSON & JOHNSON,** | |
| **Defendants.** | |

## CIVIL ACTION COMPLAINT

Plaintiffs, HELEN HEATH and JOHN HEATH ("Plaintiffs"), by and through their counsel, brings this Complaint to set forth against Defendants' ETHICON, INC., and JOHNSON & JOHNSON for injuries suffered as a result of the implantation of defective pelvic mesh products designed, manufactured and marketed by Defendants. In support, Plaintiffs state and aver as follows:

## PARTIES

1.     Plaintiff Helen Heath is, and was, at all relevant times, a citizen and resident of the state of Florida, County of Duval.

2.     Plaintiff John Heath is the spouse of Helen Heath. At all relevant times hereto John Heath has been and is a resident of the state of Florida.

3.     Defendant Johnson & Johnson is a New Jersey corporation with its principal place of business in New Brunswick, New Jersey.

4.     Defendant, Ethicon, Inc. is a wholly owned subsidiary of Defendant Johnson & Johnson and is incorporated in the state of New Jersey with its principal place of business in Somerville, New Jersey.

5.     Defendants ETHICON, INC. and JOHNSON & JOHNSON share many of the same officers, directors and operations, and maintain ownership in the assets and/or liabilities relating to the design, manufacture, marketing, distribution and sale of the medical device line at issue in this litigation and may be referenced collectively hereinafter as "Defendants".

6.     All acts and omissions of each Defendant as described herein were done by its agents, servants, employees and/or owners, acting in the course and scope of their respective agencies, services, employments and/or ownership.

## JURISDICTION AND VENUE

7.     Damages sought in this matter are in excess of $75,000.00. Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332.

8.     This Court has subject matter jurisdiction over the parties pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

9.     Venue on remand is proper in the Middle District Court of Florida pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim occurred in this district.

10.     Defendants Ethicon, Inc. and Johnson & Johnson conducted substantial business in the State of Florida and in this District, distributed Pelvic Mesh Products in

this District, receive substantial compensation and profits from sales of Pelvic Mesh Products in this District, and made material omissions and misrepresentations and breaches of warranties in this District so as to subject them to *in personam* jurisdiction in this District.

11.     Defendants Ethicon, Inc. and Johnson & Johnson conducted business in the State of Florida through sales representatives conducting business in the State of Florida and because Defendants Ethicon, Inc. and Johnson & Johnson were engaged in testing, developing, manufacturing, labeling, marketing, distributing, promotion and/or selling, either directly or indirectly, and/or through third parties or related entities, Pelvic Mesh Products; thus, there exists a sufficient nexus between Defendants' forum contacts and the Plaintiff's claims to justify assertion of jurisdiction in Florida.

12.     Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, this Court has *in personam* jurisdiction over Defendants Ethicon, Inc. and Johnson & Johnson, because they are present in the State of Florida such that requiring an appearance does not offend traditional notices of fair play and substantial justice.

## FACTS IN SUPPORT OF ALL CLAIMS

13.     At times relevant to this matter, Defendants Ethicon, Inc. and Johnson & Johnson shared many of the same officers, directors and operations, and maintained ownership in the assets and/or liabilities relating to the design, manufacture, marketing, distribution and sale of the Gynecare TVT  medical device implanted in Plaintiff Helen Heath, as well as the pelvic mesh product medical device line with products known by names including, but not limited to, Prolene Mesh, UltraPro Mesh, Gynemesh, Prolift, Prolift+M, and TVT.

14.     In or about October, 2002, Defendants Ethicon, Inc. and Johnson & Johnson began to market and sell a product known as Gynemesh, for the treatment of medical conditions in the female pelvis, primarily pelvic organ prolapse and stress urinary incontinence.  All references to Gynemesh include all variations of or names used for Gynemesh, including but not limited to Gynemesh PS.

15.     Gynemesh was derived from a product known as Prolene Mesh, which was used in the treatment of medical conditions in the female pelvis, primarily pelvic organ prolapse and stress urinary incontinence.  Prolene Mesh was derived from  Defendants Ethicon, Inc. and Johnson & Johnson's prolene mesh hernia product, and was and is utilized in the treatment of medical conditions in the female pelvis, primarily pelvic organ prolapse and stress urinary  incontinence.  All references to Prolene Mesh include all variations of Prolene Mesh, including but not limited to Prolene Soft Mesh.

16.     In or about September, 2005, the Defendants Ethicon, Inc. and Johnson & Johnson began to market and sell a product known as Prolift, for the treatment of medical conditions in the female pelvis, primarily pelvic organ prolapse and stress urinary incontinence.  The Prolift was and is offered as an anterior, posterior, or total repair system, and all references to the Prolift include by reference all variations of or names used for Prolift, including but not limited to UltraPro Mesh.

17.     In or about May, 2008, Defendants Ethicon, Inc. and Johnson & Johnson began to market and sell a product known as Prolift+M, for the treatment of medical conditions in the female pelvis, primarily pelvic organ prolapse and stress urinary incontinence. As early as 2005, Ethicon had started developing the UltraPro mesh for

pelvic floor repair. This product was marketed the product as the Prolift+M The Prolift+M was and is offered as an anterior, posterior, or total repair system, and all references to the Prolift+M include by reference all variations of or names used for Prolift+M, including but not limited to UltraPro Mesh.

18.     Defendants Ethicon, Inc. and Johnson & Johnson market and sell a product known as TVT, for the treatment of stress urinary incontinence in females. The TVT has been and is offered in multiple variations including, but not limited to, the TVT, TVT-O, and TVT-S, and all references to the TVT include by reference all variations.

19.     The products known as Prolene Mesh, UltraPro Mesh, Gynemesh, Prolift, Prolift+M, and TVT, as well as any as yet unidentified pelvic mesh products designed and sold for similar purposes, inclusive of the instruments and procedures for implantation, are collectively referenced herein as Defendants' Pelvic Mesh Products or the Pelvic Mesh Products.

20.     Defendants' Pelvic Mesh Products were designed, patented, manufactured, labeled, marketed, and sold and distributed by Defendants Ethicon, Inc. and Johnson & Johnson at all times relevant herein.

21.     On August 12, 2009, Plaintiff Helen Heath was implanted with an Ethicon/Johnson & Johnson Gynecare TVT Pelvic Mesh Product during surgery performed at Mayo Clinic Hospital in Jacksonville, Florida.

22.     The Pelvic Mesh Product was implanted in Plaintiff Helen Heath to treat her stress urinary incontinence, the use for which the Pelvic Mesh Products were designed, marketed and sold.

23.     On December 7, 2016, Plaintiff Helen Heath underwent revision surgery of the Ethicon/Johnson & Johnson Gynecare TVT Pelvic Mesh Product at Baptist Medical Center South in Jacksonville, Florida. The revision surgery became necessary because the TVT device had eroded and mesh fibers created a bladder stone that had to be removed. This caused Plaintiff Helen Heath to suffer from severe complications, including but not limited to severe pain with daily activities, pelvic pain, and recurrent stress urinary incontinence.

24.     On October 18, 2017, Plaintiff Helen Heath underwent a second revision surgery of the Ethicon/Johnson & Johnson Gynecare TVT device at Mayo Clinic Hospital in Jacksonville, Florida. The second revision surgery was warranted due to further erosion of the TVT sling which caused Plaintiff Helen Heath to suffer from pelvic and vaginal pain and bleeding.

25.     As a result of having the Pelvic Mesh Product implanted in her, Plaintiff Helen Heath has experienced significant mental and physical pain and suffering, has sustained permanent injury and permanent and substantial physical deformity and has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses.

26.     The Pelvic Mesh Product has been and continues to be marketed to the medical community and to patients as a safe, effective, reliable, medical device; implanted by safe and effective, minimally invasive surgical techniques for the treatment of medical conditions, primarily pelvic organ prolapse and stress urinary incontinence, and as safer and more effective as compared to the traditional products and procedures for treatment, and

other competing pelvic mesh products.

27.     Defendants Ethicon, Inc. and Johnson & Johnson have marketed and sold their Pelvic Mesh Product to the medical community at large and patients through carefully planned, multifaceted marketing campaigns and strategies. These campaigns and strategies include, but are not limited to direct to consumer advertising, aggressive marketing to health care providers at medical conferences, hospitals, private offices, and include the provision of valuable consideration and benefits to health care providers. Also utilized are documents, brochures, websites, and telephone information lines, offering exaggerated and misleading expectations as to the safety and utility of their Pelvic Mesh Product.

28.     Contrary to the Defendants Ethicon, Inc. and Johnson & Johnson's representations and marketing to the medical community and to the patients themselves, the Pelvic Mesh Product has high failure, injury, and complication rates, fails to perform as intended, requires frequent and often debilitating re-operations, and has caused severe and irreversible injuries, conditions, and damage to a significant number of women, including Plaintiff Helen Heath.

29.     Defendants Ethicon, Inc. and Johnson & Johnson have consistently underreported and withheld information about the propensity of the Pelvic Mesh Product to fail and cause injury and complications, and have misrepresented the efficacy and safety of the Product, through various means and media, actively and intentionally misleading the FDA, the medical community, patients, and the public at large.

30.     Defendants Ethicon, Inc. and Johnson & Johnson have known and

continue to know that their disclosures to the FDA were and are incomplete and misleading; and that the Pelvic Mesh Product was and is causing numerous patients severe injuries and complications. Defendants Ethicon, Inc. and Johnson & Johnson suppressed this information, and failed to accurately and completely disseminate or share this and other critical information with the FDA, health care providers, or the patients. As a result, Defendants Ethicon, Inc. and Johnson & Johnson actively and intentionally misled and continue to mislead the public, including the medical community, health care providers and patients, into believing that the Pelvic Mesh Product was and is safe and effective, leading to the prescription for and implantation of the Pelvic Mesh Product into Plaintiff Helen Heath.

31.     Defendants Ethicon, Inc. and Johnson & Johnson failed to perform or rely on proper and adequate testing and research in order to determine and evaluate the risks and benefits of the Pelvic Mesh Product.

32.     Defendants Ethicon, Inc. and Johnson & Johnson failed to design and establish a safe, effective procedure for removal of the Pelvic Mesh Product; therefore, in the event of a failure, injury, or complications it is impossible to easily and safely remove the Pelvic Mesh Product.

33.     Feasible and suitable alternative designs as well as suitable alternative procedures and instruments for implantation and treatment of stress urinary incontinence, pelvic organ prolapse, and similar other conditions have existed at all times relevant as compared to the Pelvic Mesh Product.

34.     The Pelvic Mesh Product was at all times utilized and implanted in a

manner foreseeable to Defendants Ethicon, Inc. and Johnson & Johnson.

35.    Defendants Ethicon, Inc. and Johnson & Johnson have at all times provided incomplete, insufficient, and misleading training and information to physicians, in order to increase the number of physicians utilizing the Pelvic Mesh Product, and thus increase the sales of the Product, and also leading to the dissemination of inadequate and misleading information to patients, including Plaintiffs.

36.    The Pelvic Mesh Product implanted into Plaintiff Helen Heath was in the same or substantially similar condition as it was when it left the possession of Defendants Ethicon, Inc. and Johnson & Johnson, and in the condition directed by and expected by Defendants.

37.    The injuries, conditions, and complications suffered due to the Pelvic Mesh Product include but are not limited to mesh erosion, mesh contraction, infection, fistula, inflammation, scar tissue, organ perforation, dyspareunia, blood loss, neuropathic and other acute and chronic nerve damage and pain, pudendal nerve damage, pelvic floor damage, pelvic pain, urinary and fecal incontinence, prolapse of organs, and in many cases the women have been forced to undergo intensive medical treatment, including but not limited to operations to locate and remove mesh, operations to attempt to repair pelvic organs, tissue, and nerve damage, the use of pain control and other medications, injections into various areas of the pelvis, spine, and the vagina, and operations to remove portions of the female genitalia, and injuries to John Heath, who is Plaintiff Helen Heath's intimate partner.

38.    Despite Defendants Ethicon, Inc. and Johnson & Johnson's knowledge

of these catastrophic injuries, conditions, and complications caused by their Pelvic Mesh Product, they have and continue to manufacture, market, and sell the Product, while continuing to fail to adequately warn, label, instruct, and disseminate information with regard to the the Pelvic Mesh Product, both prior to and after the marketing and sale of the Product.

**COUNT I**
**FAILURE TO WARN**
**(ASSERTED AGAINST DEFENDANT ETHICON, INC.**
**AND DEFENDANT JOHNSON & JOHNSON)**

39.    Defendants Ethicon, Inc. and Johnson & Johnson failed to properly and adequately warn and instruct Plaintiff Helen Heath and her health care providers as to the proper candidates, and the safest and most effective methods of implantation and use of the Pelvic Mesh Product.

40.    Defendants Ethicon, Inc. and Johnson & Johnson failed to properly and adequately warn and instruct Plaintiff Helen Heath and her health care providers as to the risks and benefits of the Pelvic Mesh Product, given  Plaintiff Helen Heath's conditions and need for information.

41.    Defendants Ethicon, Inc. and Johnson & Johnson failed to properly and adequately warn and instruct Plaintiff Helen Heath and her health care providers with regard to the inadequate research and testing of the Pelvic Mesh Product, and the complete lack of a safe, effective procedure for removal of the Pelvic Mesh Product.

42.    In addition, the Products were defective due to the lack of necessary and appropriate warnings regarding, but not limited to, the following:

a)   the Products' propensities to contract, retract, and/or shrink inside the

body;

b) the Products' propensities for degradation, fragmentation, disintegration and/or creep;

c) That the device was defective, and caused dangerous and adverse side effects, including but not limited to higher incidence of erosions, extrusions, adverse tissue response and rejection, contraction, migration, trauma, groin pain, vaginal pain, failure, and revision surgeries at a much more significant rate than other products, treatments and procedures available to treat pelvic organ prolapse;

d) That patients needed to be monitored more regularly than usual while using the device and that in the event the product needed to be attempted to revise or be removed that the procedures to remove segments of the product had a very high failure rate and/or needed to be performed repeatedly;

e) the Products' inelasticity preventing proper mating with the pelvic floor and vaginal region;

f) the rate and manner of mesh erosion or extrusion;

g) the risk of chronic inflammation resulting from the Products;

h) the risk of chronic infections resulting from the Products;

i) the risk of permanent vaginal or pelvic scarring as a result of the Products;

j) the risk of recurrent, intractable pelvic pain and other pain resulting from the Products;

k) the need for corrective or revision surgery to adjust or remove the Products;

l) the severity of complications that could arise as a result of implantation of the Products

m) the hazards associated with the Products;

n) the Products' defects described herein

o) treatment of pelvic organ prolapse and stress urinary incontinence with the Products is no more effective than feasible available alternatives;

p)  treatment of pelvic organ prolapse and stress urinary incontinence with the Products exposes patients to greater risk than feasible available alternatives;

q)  treatment of pelvic organ prolapse and stress urinary incontinence with the Products makes future surgical repair more difficult than feasible available alternatives;

r)  use of the Products puts the patient at greater risk of requiring additional surgery than feasible available alternatives;

s)  removal of the Products due to complications may involve multiple surgeries and may significantly impair the patient's quality of life; and

t)  complete removal of the Products may not be possible and may not result in complete resolution of the complications, including pain.

43.    Defendants Ethicon, Inc. and Johnson & Johnson intentionally, recklessly, and maliciously misrepresented the safety, risks, and benefits of the Pelvic Mesh Product, understating the risks and exaggerating the benefits in order to advance their own financial interests, with wanton and willful disregard for the rights and health of the Plaintiffs.

44.    As a proximate result of Defendants Ethicon, Inc. and Johnson & Johnson's design, marketing, sale, and distribution of the Pelvic Mesh Product, Plaintiffs have been injured, often catastrophically, and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, and economic damages.

45.    Defendants Ethicon, Inc. and Johnson & Johnson are strictly liable in tort to the Plaintiffs for their wrongful conduct.

WHEREFORE, Plaintiffs demand judgment against Defendants Ethicon, Inc. and

Johnson & Johnson and request compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT II
## STRICT LIABILITY
## (ASSERTED AGAINST DEFENDANT ETHICON, INC.
## AND DEFENDANT JOHNSON & JOHNSON)

46.     At the time of Plaintiffs' injuries, the Pelvic Mesh Product was defective and unreasonably dangerous to foreseeable consumers, patients, and users, including Plaintiffs, and the warnings labels and instructions were deficient.

47.     The Gynecare TVT Product was placed into the stream of commerce by Defendants Ethicon, Inc. and Johnson & Johnson with the expectation that it would reach consumers in Florida without substantial change in condition and, as of August 12, 2009, there had been no substantial change in the condition of the Gynecare TVT.

48.     The Gynecare TVT  implanted in Plaintiff Helen Heath  was in the same or substantially similar condition as when it left Defendants Ethicon, Inc. and Johnson & Johnson's possession, and in the condition directed by and expected by Defendants Ethicon, Inc. and Johnson & Johnson.

49.     The Product implanted in Plaintiff Helen Heath was not reasonably safe for its intended use and was defective with respect to its design, as described herein, in that such design posed an unreasonable risk of harm to patients in whom the Products were implanted.

50.     The Products are inherently dangerous and defective, unfit and unsafe for their intended and reasonably foreseeable uses, and do not meet or perform to the

expectations of patients and their health care providers.

51.     The Products create risks to the health and safety of the patients that are far more significant and devastating than the risks posed by other products and procedures available to treat the corresponding medical conditions, and which far outweigh the utility of the Products.

52.     Defendants Ethicon, Inc. and Johnson & Johnson have intentionally and recklessly designed the Pelvic Mesh Products with wanton and willful disregard for the rights and health of the Plaintiffs and others, and with malice, placing their economic interests above the health and safety of the Plaintiffs and others.

53.     The Product implanted in Plaintiff Helen Heath was not reasonably safe for its intended use and was defective as described herein with respect to its design. As previously stated, the Products' design defects include, but are not limited to:

a)  the use of polypropylene material and/or collagen material in the Products and the immune reaction that results from such material, causing adverse reactions and injuries;

b)  the design of the Products to be inserted into and through an area of the body with high levels of bacteria that adhere to the mesh causing immune reactions and subsequent tissue breakdown and adverse reactions and injuries;

c)  biomechanical issues with the design of the Products, including, but not limited to, the propensity of the Products to contract or shrink inside the body, that in turn cause surrounding tissue to be inflamed, become fibrotic, and contract, resulting in injury;

d)  the use and design of arms and anchors in the Products, which, when placed in the women, are likely to pass through contaminated spaces and injure major nerve routes in the pelvic region;

e)  the propensity of the Products for "creep," or to gradually elongate and deform when subject to prolonged tension inside the body;

    f)    the inelasticity of the Products, causing them to be improperly mated to the delicate and sensitive areas of the pelvis where they are implanted, and causing pain upon normal daily activities that involve movement in the pelvis (e.g., intercourse, defecation);

    g)    the propensity of the Products for degradation or fragmentation over time, which causes a chronic inflammatory and fibrotic reaction, and results in continuing injury over time;

    h)    the propensity of the Products for particle loss or "shedding", which causes a chronic inflammatory response and fibrotic reaction, and results in continuing injury over time; the lack of porosity of the Products, which leads to fibrotic bridging and results in continuing injury over time; and

    i)    the creation of a non-anatomic condition in the pelvis leading to chronic pain and functional disabilities when the mesh is implanting according to the manufacturers' instructions.

54.    Plaintiffs adopt the *Restatement of Torts (Second)* and/or the *Restatement of Torts (Third)*, bringing strict product liability claims under the common law, *Section 402A of the Restatement of Torts (Second), and/or Restatement of Torts (Third))* against Defendants Ethicon, Inc. and Johnson & Johnson.

55.    As a proximate result of the  Defendants Ethicon, Inc. and Johnson & Johnson's design, marketing, sale, and distribution of the Pelvic Mesh Product, Plaintiffs have been injured, often catastrophically, and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, and economic damages.

56.    Specifically, the Gynecare TVT device implanted in Plaintiff Helen Heath eroded causing Plaintiff Helen Heath to undergo two revision surgeries and suffer from severe complications, including but not limited to: severe pain with daily activities, pelvic pain, recurrent stress urinary incontinence, and economic damages.

57.    Defendants Ethicon, Inc. and Johnson & Johnson failed to exercise ordinary care in the representations concerning the Products while they were involved in their design, sale, testing, quality assurance, quality control, and distribution in interstate commerce, because Defendants Ethicon, Inc. and Johnson & Johnson negligently misrepresented the Products' high risk of unreasonable, dangerous, adverse side effects.

WHEREFORE, Plaintiffs demand judgment against Defendants Ethicon, Inc. and Johnson & Johnson and request compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

### COUNT III
### NEGLIGENCE
### (ASSERTED AGAINST DEFENDANT ETHICON, INC. AND DEFENDANT JOHNSON & JOHNSON)

58.    Defendants Ethicon, Inc. and Johnson & Johnson had a duty to exercise reasonable and ordinary care in the design, labeling, instructions, warnings, sale, marketing, and distribution of their Pelvic Mesh Product, and recruitment and training of physicians to implant the Pelvic Mesh Product.

59.    Defendants Ethicon, Inc. and Johnson & Johnson breached their duty of care to the Plaintiffs, as aforesaid, in the design, labeling, warnings, instructions, sale, marketing, distribution, and recruitment and training of physicians to implant the Pelvic Mesh Product.

60.    At all times material, Defendants Ethicon, Inc. and Johnson & Johnson failed to exercise reasonable care under the circumstances, as it knew, or in the exercise of reasonable care, should have known, that its Pelvic Mesh Product was not properly

designed, compounded, assembled, inspected, packaged, distributed, tested, analyzed, examined, or prepared, such that the medical device was defective, unreasonably dangerous, and likely to injure its users, including Plaintiffs herein.

61.     Also Defendants Ethicon, Inc. and Johnson & Johnson failed to exercise reasonable care under the circumstances, as it knew, or in the exercise of reasonable care, should have known, that its Pelvic Mesh Products were sold without sufficient warnings or instruction (both before as well as after their sale), such that the TVT mesh device was likely to injure its users, including Plaintiffs herein.

62.     As a result of said failures, the Gynecare TVT brand mesh device implanted in Plaintiff Helen Heath was unreasonably dangerous and defective in design and unaccompanied by adequate warnings concerning its hazardous properties.

63.     Further, Defendants Ethicon, Inc. and Johnson & Johnson failed to exercise reasonable care under the circumstances, as it knew, or in the exercise of reasonable care, should have known, that its Pelvic Mesh Products and the information (including warnings, instructions, detailing, advertising, promotion, and representations) about the characteristics and properties of the device; the potential risks associated with its use in patients; safety and efficacy data; the attributes of the device relative to other competing medical devices; and the management of patients after implantation of this device were inaccurate or incomplete, such that the medical device was likely to injure its users, including Plaintiffs herein.

64.     Defendants Ethicon, Inc. and Johnson & Johnson also failed to conduct sufficient testing, quality assurance measures and/or inspection of its Pelvic Mesh Product,

both prior to and after clearance of the product for sale, which, if properly performed, would have revealed or led, long ago, to the detection of defects in the Pelvic Mesh Product and inadequacy in the design, warnings, promotional materials and instructions which accompanied the device, such that the injuries suffered by Plaintiffs herein could have been prevented.

65.     These negligent acts by Defendants Ethicon, Inc. and Johnson & Johnson resulted in the sale of Pelvic Mesh Products that were unreasonably dangerous, unsafe, and not reasonably fit for the uses and purposes for which the medical device would ordinarily be put or some other reasonably foreseeable purpose and the unreasonably dangerous condition existed when such device, including the particular device implanted in Plaintiff Helen Heath, left Defendants Ethicon, Inc. and Johnson & Johnson's custody and control.

66.     Defendants Ethicon, Inc. and Johnson & Johnson knew or should have known that the Pelvic Mesh Product subjected Plaintiffs to unreasonably dangerous risks of which Plaintiff Helen Heath and her treating physicians would not be aware. Nevertheless, Defendants Ethicon, Inc. and Johnson & Johnson advertised, marketed, sold and distributed the Pelvic Mesh Product device for years to thousands of women, at a time when Defendants Ethicon, Inc. and Johnson & Johnson knew that there were safer methods and products available for the treatment of pelvic organ prolapse and stress urinary incontinence.

67.     Had Plaintiff Helen Heath, her treating physician, or both known of the unreasonably dangerous risks associated with the Gynecare TVT product at the time of her

implant surgery, such knowledge would have affected the treating physician's use of the device and Plaintiff Helen Heath would not have consented to the implantation of the device.

68.    As a proximate result of Defendants Ethicon, Inc. and Johnson & Johnson's design, labeling, marketing, sale, and distribution of the Pelvic Mesh Product, Plaintiffs have been injured, often catastrophically, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, and economic damages.

WHEREFORE, Plaintiffs demand judgment against Defendants Ethicon, Inc. and Johnson & Johnson and request compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT IV
## GROSS NEGLIGENCE
## (ASSERTED AGAINST DEFENDANT ETHICON, INC.
## AND DEFENDANT JOHNSON & JOHNSON)

69.    The wrongs done by Defendants Ethicon, Inc. and Johnson & Johnson were aggravated by the kind of malice, fraud, and grossly negligent disregard for the rights of others, the public, and Plaintiffs for which the law would allow, and which Plaintiffs will seek at the appropriate time under governing law for the imposition of exemplary damages, in that their conduct, including the failure to comply with applicable Federal standards: was specifically intended to cause substantial injury to Plaintiffs; or when viewed objectively from Defendants Ethicon, Inc. and Johnson & Johnson's standpoint at the time of the conduct, involved an extreme degree of risk, considering the probability and

magnitude of the potential harm to others, and they were actually, subjectively aware of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others; or included a material representation that was false, with their, knowing that it was false or with reckless disregard as to its truth and as a positive assertion, with the intent that the representation is acted on by Plaintiffs.

70.     Plaintiffs relied on the representation and suffered injury as a proximate result of this reliance.

71.     Plaintiffs therefore will seek to assert claims for exemplary damages at the appropriate time under governing law in an amount within the jurisdictional limits of the Court.

72.     Plaintiffs also allege that the acts and omissions of Defendants Ethicon, Inc. and Johnson & Johnson, whether taken singularly or in combination with the other or others, constitute gross negligence that proximately caused the injuries to Plaintiffs. In that regard, Plaintiffs will seek exemplary damages in an amount that would punish Defendants Ethicon, Inc. and Johnson & Johnson for their conduct and which would deter other manufacturers from engaging in such misconduct in the future.

WHEREFORE, Plaintiffs demand judgment against Defendants Ethicon, Inc. and Johnson & Johnson and request compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

**COUNT V**
**LOSS OF CONSORTIUM**
**(ASSERTED AGAINST DEFENDANT ETHICON, INC.**
**AND DEFENDANT JOHNSON & JOHNSON**

73.     The Gynecare TVT device implanted in Plaintiff Helen Heath eroded, requiring two invasive revision surgeries and causing her to suffer from injuries including, but not limited to pelvic pain, pain with daily activities, recurrent stress urinary incontinence and dyspareunia.

74.     As a direct and proximate cause of the injuries sustained by Plaintiff Helen Heath, her spouse John Heath has suffered a loss of spousal consortium, society, affection, services and support.

WHEREFORE, Plaintiff John Heath demands judgment against Defendants Ethicon, Inc. and Johnson & Johnson and requests compensatory damages, together with interests, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendants Ethicon, Inc. and Johnson & Johnson, and each of them, individually, jointly and severally and request compensatory damages, together with interest, cost of suit, attorneys' fees, punitive damages, and all such other relief as the Court deems just and proper as well as:

A.     All general, statutory, and compensatory damages, in excess of the amount required for federal diversity jurisdiction, and in an amount to fully compensate Plaintiffs for all injuries and damages, both past and present;

B.     All special and economic damages, in excess of the amount required for federal diversity jurisdiction and in an amount to fully compensate

Plaintiffs for all injuries and damages, pain and suffering;

C.     Attorneys' fees, expenses, and costs of this action;

D.     Double or triple damages as allowed by law;

E.     Punitive and/or exemplary damages;

F.     Pre-judgment and post-judgment interest in the maximum amount allowed by land; and

G.     Such further relief as this Court deems necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Dated this 28th day of October, 2020.

*Respectfully Submitted,*

THE MICHAEL BRADY LYNCH FIRM

By:     */s/ Michael Brady Lynch*
Michael Brady Lynch, FL Bar No. 668478
127 West Fairbanks Ave. #528
Winter Park, Florida 32789
(888) 585-5970
Fax: (321) 236-6615
Email: michael@mblynchfirm.com


*/s/ Dana Lizik*
Dana Lizik (*To Be Admitted Pro Hac Vice*)
JOHNSON LAW GROUP
Texas State Bar No. 24098007
2925 Richmond Avenue, Suite 1700
Houston, Texas 77098
(713) 626-9336
Fax: (713) 583-9460
Email: dlizik@johnsonlawgroup.com

***Attorneys for Plaintiffs***